KUKER v. JARROTT.

TRUST—TRUSTEE—MORTGAGE.—If a mortgagee know that a conveyance by a trustee under power in trust deed to sell for reinvestment on written request of life *cestui que trust* is made without consideration, for benefit of trustee, and for purpose of defeating the trust, the mortgage executed by such grantee is void; but *held* here that the evidence does not show such knowledge in mortgagee or his agent, and the mortgage held valid, although part of mortgage debt is account due by trustee.

Before GAGE, J., Florence, July, 1900.    Affirmed.

Foreclosure by John Kuker against J. Howard Jarrott, John B. Jarrott, Helen A. Jarrott, Mary M. Jarrott, Pierce B. Jarrott, Theodore E. Jarrott, Chas. E. Jarrott, and J. F. Stackley.    From Circuit decree, all defendants appeal except the two latter.

*Mr. George Galletley,* for appellants, cite: *A past due consideration or precedent debt will not support a plea of bona fide purchaser without notice:* Casy v. White, 52 N. Y.

*Messrs. Wilcox & Wilcox,* for plaintiffs, and *J. F. Stackley,* contra.    No citations.

July 22, 1901.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    From the "Case for Appeal" it appears that Charles E. Jarrott, jr., on the 30th day of April, 1892, made his bond, whereby he agreed to pay to John Kuker the sum of $275, twelve months thereafter, with interest after maturity at the rate of eight per cent. annually until paid.    Which bond was secured by a mortgage on a house and lot in the town of Florence, in this State.    This debt was for the sum of $275 *in cash,* loaned by John Kuker to Charles E. Jarrott, jr.; and not having been paid in whole or in part, an action for foreclosure of mortgage was instituted on the 5th day of December, 1896, and ripened into

judgment by default, on the 6th day of February, 1897, for
the sum of $387.23 (this included costs). Although adver-
tisement for sale was made in the year 1897, it was post-
poned at the urgent solicitation of defendant's father. The
defendant died in the year 1897, leaving no widow or lineal
descendants. When the plaintiff, John Kuker, advertised
this house and lot for sale on the first Monday in February,
1899, he was met by a petition, dated 31st January, 1899,
made by all the brothers and sisters of the said Charles E.
Jarrott, jr., deceased, and addressed to the Court of Com-
mon Pleas for Florence County, wherein it was sought to
obtain an order to restrain the sale under the decree in fore-
closure. The petition was as follows:

"The petition of J. H. Jarrott, John B. Jarrott, Helen A.
Jarrott, Mary M. Jarrott, Pierce B. Jarrott and Theodore E.
Jarrott, in the above entitled case, shows to the Court:

"1st. That Charles E. Jarrott, sr., held the land described
in the complaint under the provisions of a deed, duly exe-
cuted for the following purposes and trusts only, to wit: to
the sole and separate use and behoof of my wife, Emma E.
Jarrott (wife of the said C. E. Jarrott, sr.), for and during
the term of her natural life, and to pay over to her on her
separate receipt in writing all the income, rents, profits and
accretions of the said property, and from and after the death
of my said wife, then to the use of such of the children of the
said marriage, share and share alike. And for the following
uses and trusts, that upon the written request of his said
wife, the said trustee may sell and convey any portion of the
said estate and property, and reinvest the proceeds of said
sale, to be subject to the same trusts and limitations as the
original trust property.

"2d. That on or about the 30th April, 1892, the said
Charles E. Jarrott, sr., made application to the plaintiff, John
Kuker, for the loan of a sum of money, and said Kuker
agreed to make the said loan on the said Jarrott securing him
for the same. That the said parties finding from the said
trust deed that the said Jarrott could not execute a valid

mortgage on said trust property, procured and suffered the said Jarrott, trustee, to make a pretensive conveyance of the land described in the complaint to Charles E. Jarrott, jr., by the said trustees, and which was without consideration; and thereupon the said Charles E. Jarrott, jr., executed the mortgage described in the complaint, and for the sole purpose of securing the money loaned by said Kuker to the said Jarrott, sr., and for the purpose of defeating the terms and intent of said trust.

"3d. That the said Charles E. Jarrott, jr., has never been in the possession of the said land, but the same has ever since remained a part of the said trust estate. That the said Kuker has commenced this action for the purpose of foreclosing the said pretended mortgage, without making the petitioners parties thereto, has in said suit procured a judgment by default against the said C. E. Jarrott, jr., and an order for the sale of the said premises by the sheriff of the county of Florence; and, pursuant to said order, the said sheriff has advertised said land for sale on salesday in February, 1899, and if the said sale is allowed to be made, a cloud will be thrown on the title and rights of the petitioners.

"4th. The petitioners are informed that subsequently the said C. E. Jarrott, jr., executed a mortgage on the premises to J. F. Stackley, of the city of Florence, but the said Stackley has not been made a party to this action.

"5th. That all of said petitioners, except J. H. and John B. Jarrott, are infants.

"6th. That the petitioners are the children of said marriage, to wit: of the said J. E. Jarrott, sr., and Emma E. Jarrott, and are remaindermen under the said trust deed.

"Wherefore, the petitioners pray that said decree of sale be opened; that they, by order of this Court, be made parties to this action; that the said Stackley be made a party, and that the said sale be enjoined until the rights of the petitioners be adjudicated."

This petition came on to be heard before his Honor, Judge Aldrich, on the 4th day of February, 1899, and on the 6th

day of February, 1899, Judge Aldrich filed his order thereon, by which he enjoined the sale of the house and lot until the further order of the Court; that the judgment and sale be opened; and further required that the plaintiff amend his summons and complaint by making petitioners and J. F. Stackley parties to the action, and such other parties as he may be advised, and that said new parties have twenty days to answer.

The complaint was duly amended by making the parties named in the petition defendants. The petitioning defendants answered, setting up the facts of their petition by appropriate allegations in their answer. The defendant, J. F. Stackley, in his answer denied all the matters therein, and asked that his mortgage on the house and lot be also foreclosed.

By an order of Court, S. W. G. Shipp, Esq., was made referee, and as such directed to take the testimony and report the same to the Court. When the hearing was had thereon and the pleadings before his Honor, Judge Gage, he made the following decree:

"This was an action to foreclose a mortgage made by Charles E. Jarrott, jr., to John Kuker. It was begun on the 5th December, 1896, default made and decree for foreclosure on 6th February, 1897. The sale was delayed from time to time, but was finally advertised to occur on salesday in February, 1899. * * * It is alleged that these last named Jarrotts, to wit: Mary, Pierce and Theodore, are infants, C. E. Jarrott is now dead, and left no lineal descendants and no widow. The date of his death is about 1897. Stackley is a second mortgagee. The defense rests on the terms of a deed of trust, to be found in *Salinas* v. *Pearsall*, 24 S. C., 180, and a breach thereof by plaintiff and Jarrott, sr.

"It is not denied by the Jarrott defendants that the deed from Charles E. Jarrott, sr., to Charles E. Jarrott, jr., is regular in form, and that the written request thereon of the wife, Emma E., is in legal form. But the allegation is, that Charles E. Jarrott, sr., made the deed to Charles E., jr., with-

out consideration; that Kuker knew it; that the loan by Kuker was, in fact, a loan to Charles E., sr.; and the whole transaction was with the intent on the part of Charles E., sr., and Kuker to avoid the terms of the trust deed. This is the issue, and it is one of fact. If it be so, the deed and mortgage are invalid. I cannot sustain the contention.

"In the first place, I am satisfied that Theodore is the only one of the defendants now under twenty-one years of age, and he is nineteen years old. Mrs. Jarrott, who testified to their ages, admitted on cross-examination that the family Bible was burned, and she was not positive about their ages. But she did fix their ages by a petition in the probate court in 1891; she fixed the ages of Pierce and Theodore then at thirteen and eleven, respectively; and John, Helen and Mary fixed their ages then at twenty, eighteen and sixteen, respectively.

"In the second place, the defense is actively made by Charles E. Jarrott, sr., and his wife, Emma E., and by none of the children. It is true, the verified petition to open the judgment was made by John B. and Helen A.; but without that the judgment could not have been opened. The defense depends upon the testimony of Charles E. Jarrott, sr., and his wife. I shall consider them in an inverse order. In this transaction the plaintiff was represented by Mr. DeJongh, an attorney of the Florence bar. Mrs. Jarrott testified: 'Mr. DeJongh came to the house on one occasion with some one else, I think, and stated that Mr. Jarrott wanted to borrow some money from Mr. Kuker, and he could arrange it if I would sign the papers. He explained, but I did not exactly understand. He wanted me to have a deed made to my son, C. E. Jarrott, jr. Q. You signed on various occasions requests on deeds for Mr. Jarrott, as trustee, to convey property, did you not? A. To convey property I knew nothing about. He requested me to sign papers on several occasions, which I did. Q. When Mr. DeJongh went up to have the papers in question signed, did you sign it right then? A. I don't remember. Q. Do you remember signing it at any

time? A. I remember signing some papers. I don't know the papers you allude to. Q. I allude to the paper which conveyed the property to C. E. Jarrott, jr. A. I did not read it, and do not remember signing any particular paper. I suppose I must have signed it. Mr. DeJongh did say something about signing papers to my son. He said there would be a risk giving a deed to a stranger, and that if I would sign a deed to my son, there would be no risk.' Standing alone, with no other testimony on the subject, this testimony is not sufficiently accurate, positive and intelligent to overturn a transaction like that in issue.

"A careful consideration of the testimony of C. E. Jarrott, sr., satisfies me that he thought when the money was borrowed from Kuker, the transaction was of doubtful character; and that he took the money, if he be credited, which he had a questionable right to. But the pith and point of his testimony is, that DeJongh, as attorney for Kuker, concocted the scheme, and, therefore, was charged with a knowledge of a breach of the trust. The cross-examination shows that Jarrott was altogether familiar with obligations of the trust, about which there had been litigation before. Candidly, the testimony of Jarrott impresses me with the fact he is not a sincere man; and that where he is flatly contradicted, by a witness whose integrity has not been impeached, he cannot be relied on. Mr. DeJongh is not personally known to me, but he has not been impeached, and he unequivocally denies the testimony of Mr. Jarrott. Again, C. E. Jarrott (jr.), died after judgment for foreclosure; he was twenty-seven years old; he took no steps to defend the suit, nor did the others in his lifetime; nor did C. E. Jarrott, sr. Testimony like this could defeat any claim.

"The next matter for consideration is the Stackley mortgage. It was made two years after that to Kuker. There is no evidence to impeach it, if Stackley is to be believed.

"I am, therefore, of the opinion, that the plaintiff is entitled to have formal judgment for foreclosure and sale providing for the payment of his debt and that due to Stackley,

and I reserve jurisdiction of the case to sign judgment when it shall be presented." Judgment was afterwards signed by Judge Gage.

From the judgment, the petitioning defendants now appeal to this Court on the following grounds:

"The Circuit Court erred (as to the Kuker mortgage) : I. In directing that a judgment be entered in favor of plaintiff for $476.44, with interest, and directing a sale of the land described in the complaint to satisfy same; but the said Court should have held that the plaintiff was not entitled to a judgment for any sum, and that the complaint be dismissed : (a) The Court should have found from the testimony that the mortgage was really intended to secure a loan by the plaintiff to C. E. Jarrott, sr.   (b) That the deed from the trustee to C. E. Jarrott, jr., was without consideration, a breach of the trust, and was made for the purpose of raising money on the trust estate by way of mortgage.   (c) That the mortgage to plaintiff was taken to secure the loan actually made to C. E. Jarrott, sr., was in breach of the trust, and was an attempt by indirection to mortgage the trust property.   (d) That the plaintiff or his agent, DeJongh, knew of the attempted breach of trust, or had sufficient information to have put him on an inquiry that would have led to such knowledge.

"II. That, in any event, from the plaintiff's own testimony and that of his agent, DeJongh, the plaintiff was informed at and before the loan, that the said Jarrott, jr., had acquired a deed of conveyance to the said property by a breach of trust, in that said conveyance was alleged to have been made on a credit for a large portion of the purchase money, and the plaintiff's agent, from his own testimony, had no confidence in any statement of fact alleged to have been made to him by the trustee.

"III. The Court erred in finding as to both mortgages that the defense is actually made by Charles E. Jarrott, sr., and his wife, Emma E., when there is not a particle of testimony to support such finding; but, on the contrary, the Court should have found that the said parties are not parties to the

action; that they have no interest therein; that they are only witnesses used by the defendants; that the judgment was opened by the sworn petition of the children; that the sworn answer was put in by said children for themselves and by J. R. McCown as guardian *ad litem* for the infants, and that the cause is actually conducted by the counsel for the children.

"IV. The Court erred in holding that the defense depends on the testimony of Charles E. Jarrott, sr., and his wife. The Court should have held that the testimony of C. E. Jarrott, sr. (which the Court held was sufficient, if true, to invalidate plaintiff's mortgage), was corroborated by the testimony of Mrs. Jarrott to the effect that the agent of plaintiff told her that her husband wished to borrow some money from Mr. Kuker; that he (DeJongh) would arrange it if she (Mrs. Jarrott) would sign some papers to her son; that it would be a risk to give deed to a stranger, and that if she would sign deed to her son, there would be no risk; all of which is utterly inconsistent with the view that plaintiff's agent did not have knowledge of the attempted breach of trust. That said testimony is further corroborated by the following facts and circumstances: by the subsequent conduct of plaintiff in looking to C. E. Jarrott, sr., both before and after the death of his son, as the party to repay the loan; in dunning C. E. Jarrott, sr., repeatedly, for the money, and threatening him with foreclosure if the demand was not complied with; that plaintiff had been in the habit of loaning money to C. E. Jarrott, sr., under circumstances necessarily involving breaches of this trust deed, to wit: the loan on the Tarrh mortgage, the loan on the security of a conveyance to Mrs. Louisa Kuker, wife of plaintiff, and the mortgage of C. E. Jarrott, trustee, referred to in exhibit H."

(As to the Stackley mortgage):

"V. In directing that judgment be entered for the sum of $414.66, with interest, and directing a sale of the land to pay the same; but the Court should have held that the defendant, Stackley, was not entitled to judgment for any sum or for a

sale of the premises. The Court should have found that Stackley knew of the breach of trust, or had sufficient information to have put him on inquiry as to the consideration and in breach of the trust, to wit: *inter alia,* from the relationship of the parties, that the mortgage was offered to him to secure an account for goods sold to the trustee; the fact that C. E. Jarrott, jr., was never in possession of this property.

"VI. The Court erred in holding that there was no evidence to impeach the Stackley mortgage, 'if Stackley is to be believed,' and in ordering a foreclosure of the same; but the Court should have held that Stackley had knowledge of the breach of trust, or sufficient information to put him on the inquiry; that Stackley was not a *bona fide* purchaser or holder for value, or without notice of said mortgage; that the mortgage was given to secure an existing debt; that in any event the mortgage was invalid to the amount of $145, the portion of the account admittedly contracted before execution of the mortgage."

We will now dispose of this appeal. The first four exceptions may be considered together. The decree is satisfactory, and we only add a few words. None of the parties to the record question that if the plaintiff, Kuker, either himself or by his agent, DeJongh, knew of the fraud involved in the sale by C. E. Jarrott, sr., as trustee to C. E. Jarrott, jr., of the house and lot which belonged to the trust estate of Mrs. Emma Jarrott and her children, for the purpose of raising money for the trustee, Jarrott, sr., or Jarrott, jr., as an individual, it would upset the bond and mortgage held by Kuker, but the contention relates to the facts. The children of Jarrott, sr., and his wife took no active part in the lawsuit. Jarrott, sr., and his wife, Mrs. Emma Jarrott, were the only witnesses to the alleged fraud introduced for the purpose of establishing the same. Jarrott, sr., says in his testimony, he consulted with his children about the lawsuit and talked with the lawyer of his children. It is apparent from the record that the testimony of Jarrott, sr., is in utter disregard to the

18—61

memory of his dead son, Charles, when he attempts, as he says, to lay bare the facts attending the sale by him, as trustee, of the house and lot to his said son, Charles, and of the subsequent mortgage of said house and lot executed by his said son, Charles, to John Kuker, to secure the loan of $275 by Kuker to his said son, Charles. The testimony shows that the trust estate is a large one, and that the value of the house and lot is only $1,000. By the terms of the trust deed, the said son, Charles, was owner, along with his brothers and sisters, of the fee in all the trust estate, which fee in its enjoyment was only postponed during the lifetime of their mother, Mrs. Emma Jarrott. By the testimony of Jarrott, sr., he alone enjoyed the $275 borrowed by his son, Charles, of John Kuker. Thus it is seen that Jarrott, sr., has a curious regard for the character for probity of his dead son, Charles, who, from Jarrott's own testimony, only did what he is alleged to have done to help his father and, it is to be supposed, his father's family, which seem to have had large landed estates but no money. The son, Charles, seems to us to have belonged to that class of men whose life and substance is given up for the benefit of others and not for the advancement of his own fortunes, and to be subjected to the humiliating condition of receiving no thanks for sacrifices for others, but who, when life is closed, has his memory aspersed for the very sacrifices he has made. To earn grateful appreciation by labors for others is pleastnt, but the consciousness of having done all in his power to soften the hardships of others is often the only consolation for such labor. But did Jarrott, sr., tell the truth in his testimony? It requires very great charity to say he was only mistaken when he testified as he did in this case. To suppose that the pitiful sum of eight per cent. annual interest on $275, would tempt a successful business man like John Kuker to risk the loss of such interest *and the principal, $275, and his own good name for upright dealings,* is more than we can do. Especially as John Kuker and DeJongh both swear positively that it is not true. It is far more natural to suppose that when Jarrott,

sr., wanted his son, Charles, to pay the $250 still due on the purchase money of the house and lot, he as trustee had conveyed to his said son, that having sounded DeJongh, as the agent of John Kuker, as to his willingness to make the loan of $275 to his son, Charles, and having ascertained that the loan would be made on the terms proposed, the son, Charles, signed the note and mortgage, received the money and immediately paid it over to Jarrott, sr. Mrs. Jarrott in her testimony is not exact and definite, and hence her testimony adds nothing to the theory of Jarrott, sr. We, therefore, overrule these exceptions.

Now as to the fifth and sixth exceptions, which relate to Stackley's mortgage. This mortgage was accepted by Stackley more than two years after the deed to the land by Jarrott, sr., as trustee, on the written request of Mrs. Jarrott, as required by the deed of trust, to his son, Charles, had been placed on record. Jarrott, sr., says he told Stackley that John Kuker's mortgage was not valid and, therefore, Stackley had notice of the invalidity of Charles E. Jarrott's deed or certainly enough information to put him on inquiry. It was in proof that Stackley was a successful man of business in the city of Florence, and no man rises up to impugn his testimony. He denies under oath that Jarrott, sr., ever told him any such thing. We believe Stackley. We cannot appreciate the argument on the consideration of the mortgage of Charles Jarrott to Stackley because, forsooth, some of the debt of his mother was already past due. As between Charles Jarrott and Stackley and with no creditors of Charles Jarrott, jr., before us, we hold that the consideration was all that the law requires. These exceptions are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.